UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE NEW MEXICO ENVIRONMENT DEPARTMENT, <br><br> Plaintiffs, <br><br> v. <br><br> MEWBOURNE OIL COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. |

## COMPLAINT

Plaintiffs, the United States of America, by authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the New Mexico Environment Department ("NMED"), by authority of the Attorney General of New Mexico, file this Complaint and allege as follows:

### NATURE OF ACTION

1.      This is a civil action against Mewbourne Oil Company ("Mewbourne" or "Defendant") pursuant to the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7401 *et seq.*; the New Mexico Air Quality Control Act ("AQCA"), NMSA § 74-2-1 to -17; and the Texas Clean Air Act ("TCAA"), Texas Health and Safety Code Chapter 382.

2.      Plaintiffs seek injunctive relief and civil penalties under Section 113 of the CAA, 42 U.S.C. § 7413, Sections 74-2-12 and 74-2-12.1 of the AQCA, Sections 7.002, 7.032 and 7.105 of the Texas Water Code, based on alleged violations of the CAA and its implementing

regulations, the AQCA and its implementing regulations, and the TCAA and its implementing regulations, arising from operations at Mewbourne's oil and natural gas production systems in Lea and Eddy Counties, New Mexico and Loving and Reeves Counties, Texas.

3.      Plaintiffs allege, subject to a reasonable opportunity for further investigation and discovery, that Mewbourne has violated and/or continues to violate the following federal and state statutory or regulatory provisions in its oil and natural gas production activities, as set forth in this Complaint:

a.   Section 111(e) of the CAA, 42 U.S.C. § 7411(e) and its implementing regulations;

b.   The New Source Performance Standards ("NSPS") for Crude Oil and Natural Gas Production, Transmission and Distribution For Which Construction, Modification or Reconstruction Commenced After August 23, 2011, and On or Before September 18, 2015, 40 C.F.R. Part 60, Subpart OOOO ("NSPS Subpart OOOO");

c.   The NSPS for Crude Oil and Natural Gas Facilities for which Construction, Modification, or Reconstruction Commenced after September 18, 2015, 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa");

d.   The operating permit requirements under Subchapter V of the CAA ("Title V"), 42 U.S.C. § 7661 *et seq.*, which are implemented and administered by NMED as codified in Part 20.2.70 of the New Mexico Administrative Code ("NMAC");

e.   The New Mexico State Implementation Plan ("New Mexico SIP"), including

Section 74-2-7 of the AQCA and its implementing regulations at 20.2.72

NMAC (Construction Permits) and 20.2.73 NMAC (Notices of Intent); and

f.   The Texas State Implementation Plan ("Texas SIP"), including TCEQ's Permits

by Rule ("PBR") provisions at 30 Texas Administrative Code ("TAC"),

Chapter 106.

4.      Mewbourne's failure to comply with the applicable requirements of the CAA and

its implementing regulations, the AQCA and its implementing regulations, and the TCAA and

its implementing regulations has resulted in unlawful excess emissions of volatile organic

compounds ("VOCs") and oxides of nitrogen ("$NO_x$"), precursors to ground-level ozone (often

referred to as "smog"), as well as carbon monoxide ("CO"). Ozone, $NO_x$, and CO are all criteria

pollutants for which EPA has promulgated National Ambient Air Quality Standards

("NAAQS") due to the pollutants' adverse effects on human health and the environment.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the CAA claims pursuant to Section 113(b) of

the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

6.      This Court has supplemental jurisdiction over NMED's state law claims pursuant

to 28 U.S.C. § 1367 because those claims are so related to the claims in the United States'

action that they form part of the same case or controversy.

7.      This Court has supplemental jurisdiction over the United States' Texas state law

claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims in the

United States' action that they form part of the same case or controversy.

8.      Venue is proper in this District under Section 113(b) of the CAA, 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because a substantial number of the

violations that are the basis of this Complaint occurred at facilities Defendant owns and operates

in this District.

## AUTHORITY AND NOTICE

9.      The Attorney General has authority to bring this action on behalf of the

Administrator of the EPA under 28 U.S.C. §§ 516, 519 and Section 305 of the CAA, 42 U.S.C.

§ 7605.

10.     The New Mexico Attorney General has authority to bring this action on behalf of

the Secretary of NMED under Sections 74-2-12 and 74-2-12.1 of the AQCA.

11.     The United States has authority to bring this action to enforce the regulations in

the Texas SIP under 42 U.S.C. § 7413(a)(2)(C).

12.     Notice of the commencement of this action has been given to Mewbourne; to

NMED, the appropriate air pollution control agency in the State of New Mexico; and to TCEQ,

the appropriate air pollution control agency in the State of Texas, at least 30 days prior to the

filing of this Complaint pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1).

## DEFENDANT

13.     Mewbourne is an oil and natural gas exploration and production company

incorporated in the State of Delaware, and registered to transact business as a Foreign Profit

Corporation in the State of New Mexico and the State of Texas.

14.     Mewbourne's corporate headquarters are located at 3901 S Broadway Avenue,

Tyler, Texas 75701.

15.     Mewbourne is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e), Section 74-2-2(O) of the AQCA, and Section 382.003(10) of the TCAA.

## CLEAN AIR ACT ENFORCEMENT HISTORY

16.     On November 4, 2019, EPA issued a Notice and Finding of Violation to Mewbourne pursuant to Section 113(a)(3) of the CAA, 42 U.S.C. § 7413(a)(3), citing violations of the CAA, NSPS Subparts OOOO and OOOOa, the New Mexico SIP, and federal and New Mexico Title V operating permit regulations at thirty-four oil and natural gas production systems in New Mexico.

17.     On November 4, 2019, NMED issued a Notice of Violation to Mewbourne pursuant to Section 74-2-12 of the AQCA, citing violations of the CAA, NSPS Subparts OOOO and OOOOa, the New Mexico SIP, and federal and New Mexico state Title V operating permit regulations at thirty-four oil and natural gas production systems in New Mexico.

## FACILITIES

18.     Mewbourne owns and operates hundreds of oil and natural gas production facilities in the Permian Basin in both New Mexico and Texas. These facilities remove oil, natural gas, and other liquids from subsurface rock formations; separate the natural gas from the liquids; and then store the separated liquids in tanks until they are transported by pipeline or picked up by truck for sale (produced oil) or disposal (saltwater or "produced water"). The facilities that are the subject of this Complaint are identified in Appendix A to this Complaint.

19.     At all relevant times, Mewbourne was and is the "owner and operator" of the facilities listed in Appendix A to this Complaint within the meaning of Section 111(a)(5) of the Act, 42 U.S.C. § 7411(a)(5).

**Oil and Gas Production Operations at the Facilities**

20.     The facilities include wells that produce a mixture of oil, natural gas, and water. This mixture flows up the well under pressure to the well-head at the surface and then to separation equipment that, depending on the characteristics of the well mixture, consist of one or more vessels, including a three-phase separator, heater-treater, and vapor recovery tower ("VRT"). The separation equipment separates the effluent from the well into its constituent parts: hydrocarbon liquids, natural gas, and produced water.

21.     The separated natural gas is sent to a sales gas pipeline, if one is available, or burned in a flare or other combustion device.

22.     The oil and produced water, once separated from the natural gas, are temporarily held under pressure in the separation equipment until the liquids reach a set volume level, at which point valves open and the liquids flow into storage vessels, which are kept at or near atmospheric pressure. These storage vessels are commonly referred to as storage tanks.

23.     The produced water is ultimately transported away from the facility or recycled, while the oil in the storage tanks is hauled or piped away for sale.

24.     Larger skim storage vessels, known as "gun barrel" storage vessels, provide final separation of oil and water. The gun barrel storage vessels are not equipped with pollution controls.

**Releases of VOCs and Managing Storage Tank Pressure**

25.     When oil is transferred from the separation equipment to a storage vessel, the pressure of the oil drops and some of the hydrocarbons in the oil, including VOCs, methane, and other pollutants such as toluene and benzene that are classified by EPA as hazardous air pollutants ("HAP"), vaporize into a gaseous state. The liquids continue to emit vapors when

temperatures fluctuate in the storage vessels and when liquids are being loaded into or out of the storage vessel. All of these emissions must be managed, both to prevent over-pressurization of the storage vessel and to prevent the release of uncontrolled gases, including VOC, methane, and HAP emissions, into the atmosphere.

26.     Storage vessels are equipped with openings called "thief hatches" or "pressure relief valves" ("PRVs") that are designed to open (or "vent") as needed to relieve pressure or provide access to the tank contents, and to seal tightly when closed. Thief hatches and PRVs are collectively known as pressure relief devices ("PRDs"). Generally, properly maintained PRDs do not vent emissions to the atmosphere during normal operations, except when the PRD is actively being used (for example, for tank gauging, inspections, and maintenance).

27.     The storage vessels, control devices (*e.g.*, flares), vent lines, and all connections, fittings, PRDs, and any other appurtenances used to contain, collect, and convey vapors are collectively known as the Vapor Control System ("VCS"). A well-maintained VCS captures and routes vapors through a series of pipes or vent lines either to a flare or to a process through a vapor recovery unit ("VRU"), where vapors are recycled or recovered.

28.     Compressors are engine-driven equipment used to increase pressure and route gas to the sales pipeline. Compressors are also used to facilitate removal of fluids from a well. A VRU is also a type of compressor.

29.     Mewbourne's operations at the facilities that are the subject of this Complaint have resulted in unlawful emissions of VOCs, $NO_x$, and CO. An insufficiently designed or poorly-maintained and operated VCS may result in the venting of VOC emissions during normal operations. The combustion of produced natural gas at heater-treaters, compressors, and flares results in emissions of $NO_x$ and CO.

## <u>STATUTORY AND REGULATORY BACKGROUND</u>

30.     As set forth in Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1), the purpose of the CAA is to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population.

## I.  The Clean Air Act's New Source Performance Standards

31.     Section 111(b) of the CAA, 42 U.S.C. § 7411(b), authorizes the EPA to promulgate standards of performance applicable to "new sources" within categories of sources that cause or contribute significantly to "air pollution which may reasonably be anticipated to endanger public health or welfare." These regulations are referred to as New Source Performance Standards ("NSPS").

32.     A "new source" is any stationary source, the construction or modification of which is commenced after the promulgation of the standards of performance that will apply to such source. 42 U.S.C. § 7411(a)(2). A "stationary source" is a building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

33.     In 1979, the EPA listed "Crude Oil and Natural Gas Production" as a source category that contributes significantly to air pollution and for which standards of performance would be established. 44 Fed. Reg. 49,222 (Aug. 21, 1979).

34.     It is unlawful for owners or operators of any new source to violate any provision of an NSPS applicable to such a source after it has become effective. 42 U.S.C. § 7411(e).

35.     The EPA has delegated authority to New Mexico and Texas to implement and enforce the NSPS in the respective States pursuant to Section 111(c) of the CAA, 42 U.S.C. § 7411(c). The NSPS regulations have been incorporated by reference into the New Mexico regulations in the New Mexico Administrative Code and are federally enforceable. *See* NMAC

20.2.77.9; 40 C.F.R. §§ 60.4(b)(33); 60.4(e)(1). The NSPS regulations have also been incorporated by reference into the Texas regulations in the Texas Administrative Code and are federally enforceable. *See* 40 C.F.R. § 60.4(b)(45); 30 TAC § 101.20.

**A.   40 C.F.R. Part 60, NSPS Subparts OOOO and OOOOa**

36.     In 2012, the EPA promulgated NSPS regulations for the crude oil and natural gas production, transmission, and distribution industry sector. 77 Fed. Reg. 49,542 (Aug. 16, 2012). These standards are codified at 40 C.F.R. Part 60, Subpart OOOO ("NSPS Subpart OOOO"). 40 C.F.R. § 60.5360. NSPS Subpart OOOO applies to onshore affected facilities for which owners or operators commence construction, modification, or reconstruction after August 23, 2011, and on or before September 18, 2015. 40 C.F.R. § 60.5365.

37.     In 2016, the EPA amended the 2012 NSPS and established new standards. 81 Fed. Reg. 35,898 (June 3, 2016). These new standards are codified at 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa"). 40 C.F.R. § 60.5360a. NSPS Subpart OOOOa applies to affected facilities for which owners or operators commence construction, modification, or reconstruction after September 18, 2015. 40 C.F.R. § 60.5365a.

38.     NMED was delegated authority for NSPS Subpart OOOO effective April 3, 2015, and for NSPS Subpart OOOOa effective October 12, 2018, for the State of New Mexico. *See* 80 Fed. Reg. 5475 (Feb. 2, 2015) and 83 Fed. Reg. 46107 (Sept. 12, 2018).

39.     The State of Texas was delegated authority to implement and enforce all previously adopted and all future NSPS programs as of the effective date of December 28, 1982. *See* 48 Fed. Reg. 20,693 (May 9, 1983).

40.     All of the facilities at issue in this Complaint either commenced construction, modification or reconstruction after August 23, 2011 and on or before September 18, 2015, and

thus are potentially subject to NSPS Subpart OOOO; or commenced construction, modification or reconstruction after September 18, 2015 and thus are potentially subject to NSPS Subpart OOOOa.

41.     Among the affected facilities subject to NSPS Subparts OOOO or OOOOa are "storage vessel affected facilities." 40 C.F.R. §§ 60.5365(e); 60.5365a(e). A "storage vessel affected facility" is a single storage vessel, as defined in 40 C.F.R. § 60.5430, with the potential for VOC emissions equal to or greater than 6 tons per year ("tpy") as determined according to 40 C.F.R. § 60.5365(e) or 40 C.F.R. § 60.5365a(e)(1).

42.     NSPS Subpart OOOO and OOOOa require that "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." 40 C.F.R. §§ 60.5370(b), 60.5370a(b).

43.     Pursuant to Sections 60.5395(d) and 60.5395a(a)(2), owners and operators of storage vessel affected facilities must reduce VOC emissions by 95.0 percent according to a specified schedule.

44.     Pursuant to Sections 60.5395(e) and 60.5395a(b), if the owner or operator of a storage vessel affected facility uses a control device or routes emissions to a process to reduce VOC emissions from a storage vessel affected facility pursuant to the 95 percent emissions reduction requirement of § 60.5395(d)(1) or § 60.5395a(a), the owner or operator must equip the storage vessel with a cover connected to a closed vent system and route emissions to a control device or process, as required below:

a.   The cover shall meet the requirements of 40 C.F.R. §§ 60.5411(b) and 60.5411a(b);

b.   The closed vent system shall meet the requirements of 40 C.F.R. §§ 60.5411(c), and 60.5411a(c) and 60.5411a(d); and,

c.   The control device shall meet the requirements of 40 C.F.R. §§ 60.5412(c) and 60.5412(d), and 60.5412a(c) and 60.5412a(d).

45.    Pursuant to 40 C.F.R. §§ 60.5411(c)(3) and 60.5411a(c)(3), if the closed vent system contains one or more bypass devices that could be used to divert all or a portion of gases from entering the control device or process, the owner or operator must meet certain requirements, such as utilizing a flow indicator at the inlet of the bypass device that sounds an alarm or properly securing the bypass device inlet valve, except in certain circumstances.

46.    Owners and operators of storage vessel affected facilities must demonstrate initial compliance with standards as required by §§ 60.5410(h) - (i) and 60.5410a(h) - (i); demonstrate continuous compliance with standards as required by §§ 60.5415(e)(3) and 60.5415a(e)(3); conduct an assessment that the closed vent system is of sufficient design and capacity to ensure that all emissions from the storage vessel affected facility are routed to the control device and that the control device is of sufficient design and capacity to accommodate all emissions from the storage vessel affected facility as required by 40 C.F.R. § 60.5411a(d)(1); and perform the required notification, recordkeeping, and reporting as required by §§ 60.5420 and 60.5420a. *See* 40 C.F.R. §§ 60.5395(d) and 60.5395a(d).

## II.  Clean Air Act Title V Operating Permit Requirements

47.     Section 502 of the CAA establishes requirements for specified sources to obtain operating permits ("Title V operating permits"), and sets forth the minimum elements for such permits. 42 U.S.C. § 7661a.

48.     Section 503(c) of the CAA, 42 U.S.C. § 7661b(c), sets forth the requirement to submit a timely, accurate, and complete application for a Title V operating permit, and specifies information required to be submitted with the application.

49.     Section 504(a) of the CAA, 42 U.S.C. § 7661c(a), requires that each Title V operating permit include enforceable emission limitations and standards, a schedule of compliance, and other conditions necessary to assure compliance with applicable requirements, including those contained in a SIP.

50.     The CAA Title V operating permit program is implemented and administered by the States. Accordingly, Section 502 of the CAA requires each State to develop and submit for EPA approval a permit program meeting the requirements of Subchapter V of the CAA. 42 U.S.C. § 7661a.

51.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), and the implementing regulations at 40 C.F.R. § 70.7(b) provide that, after the effective date of the state Title V permit program, no person may violate any requirement of a Title V permit or operate a source subject to a Title V permit except in compliance with a Title V permit.

52.     EPA fully approved the New Mexico Title V operating permit program effective as of January 27, 1997. 61 Fed. Reg. 60,032 (Nov. 26, 1996).

53.     The New Mexico air quality regulations implementing the Title V operating permit program are codified at 20.2.70 NMAC, but also remain federally enforceable.

54.     20.2.70.7 NMAC defines "major source" as it is defined under Section 501 of the CAA, 42 U.S.C. § 7661. All sources that meet the definition of "major source" must obtain an operating permit. 20.2.70.200(A) NMAC.

### III.  National Ambient Air Quality Standards and State Implementation Plans (SIPs)

55.     Section 108(a) of the CAA, 42 U.S.C. § 7408(a), directs the EPA to identify air pollutants that "may reasonably be anticipated to endanger public health or welfare" and to issue ambient air quality standards for these pollutants based on the latest scientific knowledge about their effects on public health and the environment. These pollutants are known as "criteria pollutants" and the established standards are known as National Ambient Air Quality Standards "("NAAQS") for criteria pollutants. 42 U.S.C. § 7409.

56.     Pursuant to Sections 108 and 109 of the CAA, 42 U.S.C. §§ 7408 and 7409, the EPA has identified six criteria pollutants due to their adverse effects on human health and the environment: ozone, $NO_x$, sulfur dioxide, CO, particulate matter (10 microns or less and 2.5 microns or less), and lead. *See* 40 C.F.R. Part 50. Unlike the other criteria pollutants, ozone is not directly emitted from sources of air pollution but instead is formed when certain chemicals including VOCs and $NO_x$ ("ozone precursors") react with oxygen in the presence of sunlight. Thus, VOCs and $NO_x$ are subject to regulation as part of the NAAQS for ozone. 40 C.F.R. §§ 50.6 to 50.11.

57.     Following promulgation of new or revised NAAQS, EPA is required to designate all areas within each state as in attainment, nonattainment, or unclassifiable for the standard within two years. *See* 42 U.S.C. § 7407(d). If the concentrations of a criteria pollutant in a geographic area meet or fall below the NAAQS, the area is designated as in "attainment" of the standard. Areas that exceed the NAAQS are designated as "nonattainment" areas. Areas that do

not have monitoring data available are designated as "attainment/unclassifiable" or "unclassifiable."

58.     Lea and Eddy Counties, New Mexico, and Reeves and Loving Counties, Texas, where the relevant facilities owned and operated by Mewbourne are located, are currently designated as in attainment of the NAAQS for all criteria pollutants. However, during the timeframes relevant to this Complaint, air quality monitors in Lea and Eddy Counties registered rising ozone concentrations that have exceeded 95 percent of the NAAQS for ozone.

## IV. State Implementation Plans (SIPs)

59.     Section 110(a) of the CAA, 42 U.S.C. § 7410(a), requires each state to adopt and submit to EPA a plan that provides for implementation, maintenance, and enforcement for each promulgated NAAQS in each air quality control region (or portion thereof). Each such plan, known as a State Implementation Plan or SIP, must include enforceable emissions limitations and other control measures as well as a permit program to ensure that NAAQS are achieved. 42 U.S.C. § 7410(a)(2)(A).

60.     Pursuant to Section 113(a) and (b) of the CAA, 42 U.S.C. § 7413(a) and (b), upon EPA approval, SIP requirements are federally enforceable. Under 40 C.F.R. § 52.23, any permit limitation or condition contained within a permit issued under an EPA-approved program that is incorporated in a SIP is a requirement of the SIP and is federally enforceable under Section 113. Failure to comply with an EPA-approved SIP or a state permit issued as part of an EPA-approved SIP is a violation of the implementation plan and subject to a federal enforcement action. *See* 42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.

### A.  **New Mexico SIP**

61.     The regulations that comprise the New Mexico SIP as approved by the EPA are set forth in 40 C.F.R. § 52.1620(c). These regulations are codified at Title 20, Chapter 2 of the NMAC.

### **20.2.73.200 NMAC – Notice of Intent Requirements**

62.     Pursuant to 20.2.73.200.A(1) and (2) NMAC, any owner or operator intending to construct or modify a stationary source that has a potential emission rate greater than 10 tpy of any regulated air contaminant is required to file a Notice of Intent ("NOI") with NMED.

63.     Pursuant to 20.2.73.200.A(4) NMAC, the NOI must be filed prior to the commencement of construction. If a construction permit is required, construction or modification cannot begin prior to the issuance of a permit under 20.2.72 NMAC. Alternatively, if no permit is required, construction or modification cannot begin until NMED issues a written determination that a permit is not required.

64.     Pursuant to 20.2.73.200.B NMAC, NOIs must include a description of the new facility or modification including all operations affecting air emissions; the nature and quantities of any regulated air contaminants the new source or modification will emit; and a description of any air pollution control device or method to be utilized.

### **20.2.72 NMAC – Construction Permit Requirements**

65.     Pursuant to 20.2.72.200.A NMAC, construction permits must be obtained from NMED by any person constructing or modifying a stationary source which has a potential emission rate greater than 10 pounds per hour or 25 tons per year of any regulated air contaminant for which there is a National or New Mexico Ambient Air Quality Standard, including CO and $NO_x$.

66.     All sources subject to Part 20.2.72 NMAC must file a construction permit application prior to the commencement of construction, modification, or installation. No construction, modification, or installation shall begin prior to the issuance of the permit, regardless of the anticipated commencement date. 20.2.72.200.E NMAC.

67.     Pursuant to 20.2.72.203 NMAC, any person seeking a construction permit must file a written application with NMED, following the instructions on the forms furnished by NMED, and the written application must contain the information specified in 20.2.72.203.A(1)-(15) NMAC.

68.      Construction permit applications must include all calculations and computations of regulated air contaminants the source will emit; a process flow sheet and site diagram of all components and locations of emissions to the atmosphere; a full description of the equipment to be used for air pollution control; and a description of the equipment or methods proposed to be used for emission measurement. 20.2.72.203.A(3), (7), and (9) NMAC.

### B. Texas SIP

69.     The regulations that comprise the Texas SIP as approved by the EPA are set forth in 40 C.F.R. § 52.2270(c). The Texas SIP regulations governing the control of air pollution by permits for new construction and modification are codified at 30 TAC, Chapter 116.

70.     Pursuant to 30 TAC § 116.14(2), an "oil and gas facility," for the purposes of standard permits in Subchapter F of 30 TAC, Chapter 116, is defined as a facility which handles gases and liquids associated with the production, conditioning, processing, and pipeline transfer of fluids found in geologic formations beneath the earth's surface.

71.     Pursuant to 30 TAC § 116.110(a),  any person who plans to construct any new facility or to engage in the modification of any existing facility which may emit air contaminants into the air of the state of Texas, before any actual work is begun on the facility, is required to:

a.      obtain a permit under 30 TAC § 116.111;

b.      satisfy the conditions of a standard permit under Subchapter F of 30 TAC, Chapter 116;

c.      satisfy the conditions of a flexible permit under Subchapter G of 30 TAC, Chapter 116;

d.      satisfy the conditions of a PBR; or

e.      satisfy the criteria for a de minimis facility or source under 30 TAC § 116.119.

### 30 TAC Chapter 106 – TCEQ Permits By Rule

72.     30 TAC, Chapter 106 "applies to certain types of facilities or changes within facilities . . . where construction is commenced on or after the effective date of the relevant permit by rule." 30 TAC § 106.2.

73.     Pursuant to 30 TAC § 106.4(c), the emissions from the facility in question must comply with all the rules and regulations of TCEQ and with the intent of the TCAA, including protection of health and property of the public, and all emissions control equipment must be maintained in good condition and operated properly during operation of the facility.

74.     Pursuant to 30 TAC § 106.6(b), all representations concerning construction plans, operating procedures, and maximum emissions rates in any certified registration under this section become conditions upon which the facility permitted by rule must be constructed and operated.

75.     Pursuant to 30 TAC § 106.6(c), it is unlawful for any person to vary from such representation referenced in § 106.6(b) if the change will cause a change in the method of control of emissions, the character of the emissions, or will result in an increase in the discharge of the various emissions, unless the certified registration is revised beforehand.

76.     Pursuant to 30 TAC § 106.6(e)(2), certified registrations established on or after November 15, 1996 shall be submitted no later than the date of operation.

**V.  Applicable Enforcement Provisions**

77.     Section 113 of the CAA, 42 U.S.C. § 7413, authorizes EPA to commence a civil action for injunctive relief and/or civil penalties against any person who has violated any requirement or prohibition of the CAA or regulations promulgated thereunder, or who has violated any applicable permit or implementation plan, such as the Texas SIP or the New Mexico SIP.

78.     Any person, including an individual, corporation, or partnership, as defined in CAA Section 302(e), 42 U.S.C. § 7602(e), who violates any requirement or prohibition in CAA Subchapter I, Part A is subject to, among other things, a civil penalty of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for violations that occurred after November 2, 2015, where penalties are assessed on or after January 6, 2023. *See* CAA Section 113(b), 42 U.S.C. § 7413(b), as modified by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, and most recently by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74 § 701, 129 Stat. 584, 599–601; *see* 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

79.     Sections 74-2-12 and 74-2-12.1 of the AQCA authorize NMED to commence a civil judicial action for appropriate relief, including civil penalties and injunctive relief, against any person that has violated or is violating a requirement or prohibition of the AQCA, a regulation promulgated pursuant to that Act, or a condition of a permit issued under that Act.

80.     A person who violates a provision of the AQCA or a regulation, permit condition, or emergency order adopted or issued pursuant to that Act may be assessed a civil penalty not to exceed $15,000 for each violation for each day during any portion of which the violation occurs. NMSA § 74-2-12.1.

**GENERAL ALLEGATIONS**

## I.  New Mexico Facility Inspections

81.     On April 16-18, 2019, EPA and NMED inspected 16 oil and natural gas production facilities owned and operated by Mewbourne and located in New Mexico ("Inspected Facilities") using optical gas imaging technology ("OGI") to detect VOC and other hydrocarbons being emitted; a photoionization detector to detect and measure VOC concentrations in the air; and olefactory, visual, and audio ("OVA") methods.

82.     Of the 16 Inspected Facilities, two were not operating: Forty Niner Ridge Unit 105H 106H Battery and Speedwagon 27 Fee Battery. At these facilities, Mewbourne reported that the wells that produce oil into the storage vessels were not producing at the time of the inspection, and the oil storage vessels did not contain oil during the inspections. At a third facility, the Mad Dog 26 MD State Com 1H Battery Facility, pumps were transferring oil from the oil storage vessels into the oil sales pipeline during the inspection. EPA and NMED did not expect to observe emissions at these three facilities, as no emissions are expected from the oil

storage vessels' PRDs if the wells are not producing oil into the storage vessels or during oil transfers to the pipeline.

83.     During the inspections of each of the 16 facilities, federal and state inspectors observed and documented numerous indicia of unlawful emissions and evidence of violations of the applicable state and federal regulations, including, but not limited to:

a.   At 11 of the Inspected Facilities, inspectors observed significant amounts of VOC emissions from the PRDs on the storage vessel covers and/or from the closed vent systems (*i.e.*, thief hatches on oil and produced water storage vessel covers and/or PRVs on the storage vessels' closed vent systems).

b.   At 15 of the Inspected Facilities, inspectors observed bypass devices on the storage vessels' closed vent systems which would allow, or during the inspection did allow, emissions from the oil and produced water storage vessels to be vented to the atmosphere, bypassing the closed vent system, VRU, and flare. Inspectors further observed that (1) none of the bypass devices included any flow indicators or valves with car-seals or lock-and-key type configurations at the inlets to the bypass devices; and (2) the bypass devices were not low leg drains, high point bleeds, analyzer vents, open-ended valves or lines, or safety devices.

c.   At 11 of the Inspected Facilities, inspectors observed significant amounts of VOC emissions venting from the bypass devices. During venting from the bypass devices, inspectors observed that no alarm or other remote notification system that alarms to the nearest field office was used to notify Mewbourne

personnel that the bypass devices had been initiated or were in use at any of the 11 Inspected Facilities.

d.  At several of the Inspected Facilities, inspectors observed evidence of historical venting of emissions, such as pervasive staining on equipment, especially around the PRVs and thief hatches. In many instances, inspectors observed spilled oil residing inside the storage vessel containment areas.

e.  At six of the Inspected Facilities, inspectors observed the operation of emissions sources that Mewbourne had not identified to NMED in any NOI application.

## II.  Records Review for New Mexico Inspected Facilities

84.  EPA also conducted a comprehensive review of documents submitted by Mewbourne to EPA and NMED as well as public records to assess the applicability of NSPS Subparts OOOO and OOOOa to the Inspected Facilities.

85.  Based on this review of public and agency records, Plaintiffs determined that the oil storage vessels at all 16 of the Inspected Facilities have per-vessel VOC emissions greater than 6 tpy and satisfy other regulatory criteria, making such facilities "storage vessel affected facilities" as that term is used in 40 C.F.R. Part 60, Subparts OOOO and OOOOa.

## III.  Flyover Surveillance

86.  EPA periodically conducts helicopter surveillance of oil and gas operations in the Permian Basin in New Mexico and Texas using OGI technology to detect hydrocarbon emissions emanating from storage vessels and control devices.

87.  In September and October 2019, EPA conducted helicopter flyovers and observed unauthorized emissions emanating from 19 facilities owned and operated by

Mewbourne ("2019 Flyover Facilities"). Of these 19 2019 Flyover Facilities, 2 were among the Inspected Facilities.

88.     In August 2020, and again in October 2020, EPA conducted additional helicopter flyovers and observed unauthorized emissions emanating from 53 facilities owned and operated by Mewbourne ("2020 Flyover Facilities"). Of these 53 2020 Flyover Facilities, 2 were among the Inspected Facilities and 8 were among the 2019 Flyover Facilities.

**IV.  Information Request**

89.     On November 4, 2019, the EPA requested additional information from Mewbourne, pursuant to Section 114 of the CAA, 42 U.S.C. §7414, pertaining to all of Mewbourne's facilities in New Mexico.

90.     On January 7, 2020 and February 6, 2020, Mewbourne provided responsive information to the EPA as to the facilities in New Mexico ("114 Responses"). Mewbourne's 114 Responses included daily oil production data, daily throughput data for the oil and produced water tanks, records of NOI submittals and emissions estimates for the Inspected Facilities, monthly and semiannual equipment inspection records, information regarding the use of bypass devices, and VRU and flare equipment maintenance and repair invoices.

91.     On the basis of the information provided in the 114 Responses, Plaintiffs estimated storage vessel-specific and site-wide annual emissions of VOC, $NO_x$, and CO for each of the Inspected Facilities and the Flyover Facilities. Plaintiffs compared these estimates to the potentially applicable regulatory requirements under both Federal and state law and determined the following:

     a.   the oil storage vessels located at each of the 2019 Flyover Facilities and the
           2020 Flyover Facilities have per-vessel VOC emissions greater than 6 tpy and

satisfy other regulatory criteria, making such facilities "storage vessel affected facilities" as that term is used in 40 C.F.R. Part 60, Subparts OOOO and OOOOa;

b.  certain of the Inspected and Flyover Facilities in New Mexico for which Mewbourne had neither submitted an individual construction permit application nor registered for a General Construction Permit ("GCP") had facility-wide emissions of $NO_x$ or CO greater than 25 tpy or VOC emissions greater than 100 tpy, making such facilities subject to the construction permit requirements in 20.2.72 NMAC;

c.  certain of the Inspected and Flyover Facilities in New Mexico for which Mewbourne had not applied for an operating permit had facility-wide emissions of CO, NOx, or VOC in excess of 100 tpy, making such facilities subject to the operating permit requirements at 20.2.70 NMAC.

## V.  Permit Status for Texas Facilities

92.     At the time of EPA's 2019 and 2020 helicopter flyovers, the seven oil and natural gas production facilities identified in Table 1 were subject to the conditions of the Oil and Gas Handling and Production Facility Permit by Rule (30 TAC § 106.352) ("PBR"), according to permit registration forms submitted by Mewbourne to TCEQ after the flyover occurred.

93.     Table 1 lists for each Texas flyover facility the well completion date and the date Mewbourne certified its PBR registration submittals to TCEQ.

| Table 1: Permit Information for Texas Facilities | | |
| --- | --- | --- |
| Facility Name | Well Completion Date | PBR Certification Date |
| Kentzel State 42 SL | 7/14/2016 | 1/24/2020 |
| TXL 19 H301DM Battery | 7/10/2017 | 3/24/2020 |
| TXL 31 H301PA Battery | 12/30/2016 | 1/23/2020 |
| TXL 41 B201DM Battery | 9/29/2015 | 3/24/2020 |
| TXL SOUTH 56-T2-2X11 W101DE Battery | 6/20/2017 | 5/19/2020 |
| TXL 37 W201PA Battery | 10/15/2015 | 5/19/2020 |
| Kentzel State 42 W101BO | 6/28/2019-4/6/2020 | 1/23/2020 |

94.     In the PBR registration forms submitted to TCEQ for each of the Texas facilities listed in Table 1, Mewbourne represented that: emissions from storage tanks are routed through a VRU or to a flare for destruction; emissions from gun barrel separators (where present) are routed through the VRU with a flare backup; and gas can be routed to an emergency flare for destruction in the event of an upset to the sales gas system. These representations were inconsistent with EPA's observations during the 2019 and 2020 flyovers.

**CLAIMS FOR RELIEF**

**Claim 1: Violations of NSPS Subparts OOOO and OOOOa in the State of New Mexico**

95.     Paragraphs 1 through 94 are incorporated herein by reference.

96.     The storage vessels at the facilities listed in Appendix 1 and potentially other storage vessels (subject to a reasonable opportunity for further investigation and discovery) are storage vessel affected facilities as that term is defined in NSPS Subparts OOOO or OOOOa.

97.     Dating from at least the date of inspection and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Mewbourne violated one or more of the following provisions in NSPS Subparts OOOO or OOOOa, as applicable, at each of the facilities listed in Appendix 1:

a.  the cover requirements of 40 C.F.R. §§ 60.5411(b) or 60.5411a(b);

b.  the closed vent system requirements of 40 C.F.R. §§ 60.5411(c) or 60.5411a(c)-(d);

c.  the VOC standards for storage vessel affected facilities at 40 C.F.R. § 60.5395(d)(1) and (e)(1) or 40 C.F.R. § 60.5395a(a)(2) and (b)(1);

d.  the continuous compliance requirements of 40 C.F.R. §§ 60.5395(g)(2) and 60.5415(e)(3) or 40 C.F.R. §§ 60.5395a(d)(2) and 60.5415a(e)(3);

e.  the OVA inspection requirements for closed vent systems and covers at 40 C.F.R. §§ 60.5416(c)(1) and (2) or 60.5416a(c)(1) and (2);

f.  the emissions determination requirement at 40 C.F.R. §§ 60.5365(e) or 60.5365a(e);

g.  the recordkeeping requirements at 40 C.F.R. § 60.5420a(c)(15)(i)-(iii) for fugitive emissions components at a well site;

h.  the annual reporting requirements at 40 C.F.R. § 60.5420(b)(1) and (6) or 40 C.F.R. § 60.5420a(b)(1) and (6); and

i.  the good air pollution control practice requirement at 40 C.F.R. §§ 60.5370(b) or 60.5370a(b).

98.  Each of the violations alleged in Paragraph 97 is a violation of Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

99.  Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Mewbourne is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

100.     Pursuant to Section 74-2-12.1(A) of the AQCA, Mewbourne is liable for civil penalties of up to $15,000 per day for each violation.

<u>**Claim 2: Failure to Submit NOI to NMED**</u>

101.     Paragraphs 1 through 94 are incorporated herein by reference.

102.     The facilities listed in Appendix 2 have potential emission rates of VOC greater than 10 tpy, requiring them to file an NOI with NMED prior to the commencement of construction pursuant to 20.2.73.200 NMAC.

103.     For each of the facilities listed in Appendix 2, dating from the start of construction and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Mewbourne failed to submit an NOI, failed to submit an NOI prior to the start of construction, and/or failed to submit an NOI in a manner that reflects all emissions sources, in violation of 20.2.73.200.A(1) and (4) NMAC and 20.2.73.200.B NMAC.

104.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Mewbourne is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

105.     Pursuant to Section 74-2-12.1(A) of the AQCA, Mewbourne is liable for civil penalties of up to $15,000 per day for each violation.

<u>**Claim 3: Failure to Obtain Construction Permit**</u>

106.     Paragraphs 1 through 94 are incorporated herein by reference.

107.     The facilities listed in Appendix 3 have potential emission rates of $NO_x$ or CO greater than 25 tpy or 10 lb/hour, requiring them to obtain a construction permit pursuant to 20.2.72 NMAC. 20.2.72.200.A(1) NMAC.

108.     For each of the facilities listed in Appendix 3, dating from the start of construction and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Mewbourne failed to obtain a construction permit prior to construction and/or failed to obtain a construction permit that reflects all emissions sources, in violation of 20.2.72.200.A and E, and 20.2.72.203.A NMAC.

109.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Mewbourne is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

110.     Pursuant to Section 74-2-12.1(A) of the AQCA, Mewbourne is liable for civil penalties of up to $15,000 per day for each violation.

**Claim 4: Failure to Obtain NMED Title V Operating Permit for Major Sources Subject to 40 C.F.R. Part 60, Subparts OOOO or OOOOa**

111.     Paragraphs 1 through 94 are incorporated herein by reference.

112.     The storage vessels at the facilities listed in Appendix 4 have a potential to emit at least 100 tpy of VOC, $NO_x$, or CO and are "major sources," as defined under Section 501 of the CAA, 42 U.S.C. § 7661, and 20.2.70.7.R NMAC, requiring them to obtain an operating permit under 20.2.70 NMAC.

113.    For each of the facilities listed in Appendix 4, dating from the start of construction and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Mewbourne failed to submit an application for an operating permit within twelve months of the commencement of operation as a major source, in violation of 20.2.70.200(A) and 20.2.70.201(A) NMAC.

114.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Mewbourne is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

115.    Pursuant to Section 74-2-12.1(A) of the AQCA, Mewbourne is liable for civil penalties of up to $15,000 per day for each violation.

### Claim 5: Failure to Timely Submit Certified PBR Registrations

116.    Paragraphs 1 through 94 are incorporated herein by reference.

117.    The facilities listed in Appendix 5 have potential emissions rates of $NO_x$ or CO less than 25 tpy, requiring them to obtain a PBR. *See* 30 TAC §§ 106.4, 122.122.

118.    For each of the facilities listed in Appendix 5, dating from the start of construction and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Mewbourne failed to submit certified PBR registrations by the date of operation, in violation of 30 TAC § 106.6(e)(2).

119.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Mewbourne is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each

violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129

Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

### Claim 6: Failure to Comply with PBR Representations and Failure to Maintain and Operate Emissions Control Equipment in the State of Texas

120.    Paragraphs 1 through 94 are incorporated herein by reference.

121.    The facilities listed in Appendix 6 have potential emissions rates of $NO_x$ or CO

less than 25 tpy, requiring them to obtain a PBR. *See* 30 TAC §§ 106.4, 122.122.

122.    For each of the facilities listed in Appendix 6, dating from at least the date of

flyover and, subject to a reasonable opportunity for further investigation and discovery,

continuing thereafter, Mewbourne failed to adhere to the representations made under each

facility's PBR with respect to capturing and routing emissions to a control device or VRU, in

violation of 30 TAC § 106.6(b) and (c), and failed to maintain in good condition and properly

operate all emissions control equipment during operation of the facility, in violation of 30 TAC

§ 106.4(c).

123.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Mewbourne is

liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that

occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each

violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129

Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

### Claim 7: Violations of NSPS Subpart OOOOa in the State of Texas

124.    Paragraphs 1 through 94 are incorporated herein by reference.

125.    The storage vessels at the facilities listed in Appendix 7 and potentially other storage vessels (subject to a reasonable opportunity for further investigation and discovery) are storage vessel affected facilities as that term is defined in NSPS Subpart OOOOa.

126.    Dating from at least the date of inspection and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Mewbourne violated one or more of the following provisions in NSPS Subpart OOOOa at each of the facilities listed in Appendix 7:

    a.   the cover requirements of 40 C.F.R. § 60.5411a(b);

    b.   the closed vent system requirements of 40 C.F.R. § 60.5411a(c);

    c.   the VOC standards for storage vessel affected facilities at 40 C.F.R. § 60.5395a(a)(2) and (b)(1);

    d.   the continuous compliance requirements of 40 C.F.R. §§ 60.5395a(d)(2) and 60.5415a(e)(3); and

    e.   the good air pollution control practice requirement at 40 C.F.R. § 60.5370a(b).

127.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Mewbourne is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by 31 U.S.C. § 3701 note, 129 Stat. 584, 599–601; 40 C.F.R. § 19.4, and 88 Fed. Reg. 986, 989 (Jan. 6, 2023).

## **PRAYER FOR RELIEF**

WHEREFORE, based on the above allegations, Plaintiffs request that this Court:

A.      Permanently enjoin Defendant from further violating the CAA, the AQCA, the TCAA, the regulations implementing those statutes, and all applicable permits;

B.      Order Defendant to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA, the AQCA, the TCAA, regulations implementing those statutes, and all applicable permits;

C.      Assess a civil penalty against Defendant for each violation of the CAA, its implementing regulations, the New Mexico SIP, the Texas SIP, and the applicable federally enforceable permits of up to $37,500 per day for each violation occurring prior to November 2, 2015, and up to $117,468 per day for each violation occurring on or after November 2, 2015;

D.      Assess a civil penalty against Defendant for each violation of the AQCA, its implementing regulations, and all applicable state-issued permits of up to $15,000 per day for each violation; and

E.      Grant such other and further relief as the Court deems just and proper.


                            Respectfully submitted,

                            TODD KIM
                            Assistant Attorney General
                            Environment and Natural Resources Division
                            United States Department of Justice


                            *Nicole Veilleux*
                            _____
                            NICOLE VEILLEUX
                            Senior Counsel
                            Environmental Enforcement Section
                            Environment and Natural Resources Division
                            United States Department of Justice
                            P.O. Box 7611, Benjamin Franklin Station
                            Washington, DC 20044-7611

(202) 616-8746
nicole.veilleux@usdoj.gov


ALEXANDER M.M. UBALLEZ
United States Attorney


RUTH F. KEEGAN
Assistant United States Attorney
District of New Mexico
P.O. Box 607
Albuquerque, NM 87103
Phone: 505-224-1470
Mobile: 505-206-4197
Fax: 505-346-7296
Ruth.F.Keegan@usdoj.gov

<u>OF COUNSEL:</u>

JENNIFER LEE
Attorney Advisor, Air Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency,
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460
lee.jennifer@epa.gov

ALEXANDREA ROLAND
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, TX 75270
(214) 665-2753
roland.alexandrea@epa.gov

JAMES C. KENNEY
Cabinet Secretary
New Mexico Environment Department
1190 St. Francis Drive
Santa Fe, New Mexico 87501
(505) 470-6161
James.kenney@state.nm.us

CHRIS VIGIL (NM Bar# 141937)
Special Assistant Attorney General
New Mexico Environment Department
121 Tijeras Ave., NE, Suite 1000
Albuquerque, NM 87102
(505- 469-4696
Christopherj.vigil@env.nm.gov
Attorney for Plaintiff New Mexico Environment
Department

## APPENDIX A

| Mewbourne Facility Name |
| --- |
| Forty Niner Ridge Unit 105H 106H Battery |
| FNR 17/20 W2IP FED COM #3H OIL MT |
| FNR FED UNIT #1H OIL MT |
| Speedwagon 27 Fee Battery |
| Yardbirds 3 W0AP Fee 2H W2AP 1H Battery |
| Queen 23 24 Fed Com Battery |
| Hoss 2 11 Federal Com Battery |
| Mad Dog 26 MD State Com 1H Battery |
| Toro 36 B3CN B2CN State 1H Battery |
| Toro 36 B3AP State 1H Battery |
| Pronghorn 15 B3CN Fed Com 1H Battery |
| Cabra Nino 11 B3MD State Com 1H Battery |
| Salado Draw 9 16 W1BO Fed Com Battery |
| El Mar 21 W0DM 2H W1CN 3H W0CN 4H Battery |
| Jennings 34 W1MD Fed Com 1H Battery |
| Lindale 24-25 W1AH Fed 1H 2H Battery |
| SALADO DRAW 10 W1PA FED COM #2H OIL MT |
| BILBREY 34/27 B2NC FED COM #1H OIL MT |
| VIRGO 24/23 B2AD FED COM #1H OIL MT |
| ROSCOE 6 B3AD FED COM #1H OIL MT |
| BOSTON 7 W2MP FEE #1H OIL MT |
| ROCK SPUR 27 W2CN STATE COM #1H OIL MT |
| HOLLYWOOD 28/33 W2IP FED COM #1H OIL MT |
| South Loving 2 11 W0DE State Com 001H |
| JOURNEY 12 W0MP FEE COM #3H OIL MT |
| Jennings 27 W0AP Fed Com 3H Oil MT Battery |
| BLACK LAKE 5 PA STATE COM 001H |
| SKEEN 21 STATE COM 002H |
| LAYLA 35 MD FEE COM 001H |
| FLEETWOOD 36 25 W2ML STATE COM 002H |
| BUFFALO TRACE 1 36 W1PA FEDERAL COM 002H |
| OWL DRAW 27 22 B2NC FEDERAL COM #001H |
| OWL DRAW 22 W1AP FED COM #1H OIL MT |
| Red Hills West 22 Federal Com 001 |
| STERLING POUND 20/29 W2DE ST #1 OIL MT |
| WOLFMAN 5/4 W0LI FED COM #1H OIL MT |
| GHOSTRIDER 25/36 W0AP FED COM 1H OIL MT |
| GHOSTRIDER 25/36 WODM FED COM #2H OIL MT |
| MOTLEY 6/7 W2DE FED COM #1H OIL MT |

| |
|---|
| Black Lake 7 CN State Com #002H |
| ARMSTRONG 26 23 W1EE FEDERAL COM #001H |
| DEVON 8 W2PM FEE #1H OIL MT |
| GOOSE 29/28 W2BA ST COM #1H OIL MT |
| ROCK SPUR 27 W2AP STATE #1H OIL MT |
| VIPER 29 32 WOLM FED COM #1H OIL MT |
| PADUCA 7/6 A2ED FED COM #1H OIL MSTR |
| DELAWARE RANCH 14 B2BO FEE #1H OIL MT |
| RED HILLS WEST UNIT #007H OIL MT |
| ANNABELLE 18/13 W2PO FED COM #1H OIL MT |
| BIG SINKS 1 W1PA FED COM #2H OIL MT |
| BIRDDOG 20/17 B2ED ST COM #1H OIL MT |
| DELAWARE RANCH 11 W2NC FEE #1H OIL MT |
| DERRINGER 18 B2MP FED #1H OIL MT |
| Fuller 14 23 W1IP and 14 11 W1HA Battery |
| FULLER 14/23 B2LM FED COM #1H OIL MT |
| FULLER 14/23 W2LM FED COM #2H OIL MT |
| GAZELLE 22 B3MD FED COM #1H OIL MT |
| LA TRUCHA 6 B1CV ST COM 1H OIL MT |
| RED HILLS WEST UNIT #008H OIL MT |
| SLIDER 18 WOMD FED COM #1H OIL MT |
| SPEEDWAGON 27 W2DM FEE #1H OIL MT |
| WILD TURKEY 36/35 B2AB ST COM 1H OIL MT |
| MAD DOG 35 CN ST COM #1H OIL MT |
| FULLER 13/24 BATTERY OIL MT |
| SALADO DRAW 10 A3PA FED #2H OIL MT |
| SALADO DRAW 9 AP FEDERAL COM #001H |
| STYX 17 W2PA FEE COM #1H OIL MT |
| ZEPPELIN 32 WOLI ST COM #1H OIL MT |
| YARDBIRDS 3 W2DM FEE #1H OIL MT |
| Red Hills West 21 W1DM Federal Com 003H |
| WEST LOVING 12 W2EH STATE COM 1H OIL MT |
| DEVON 6 W2AD FEE #1H OIL MT |
| CREEDENCE 21 16 & KANSAS 28 33 BATTERY |
| JOURNEY 12 B2MP FEE #001H |
| FORTY NINER RIDGE UNIT #102 |
| Fuller 14 23 B2IP Federal #002H |
| COMMODORE 30 W2PA FED COM #1H OIL MT |
| Coltrane 36 25 W0PI Federal Com #001H |
| ANNABELLE 13/18 W2BA FED COM #1H OIL MT |
| ARMSTRONG 26/35 WOLM FED COM #1H OIL MT |
| CHICAGO 9/8 W0HE FEE COM #1H OIL MT |
| BOSTON 7 WOLI FEE #1H OIL MT |

| |
|---|
| CAPER 20/29 B2CN FED COM #1H OIL MT |
| CAST AWAY 6 B2BW ST COM UNIT 1H OIL MT |
| EL NINO 13 B3DM ST COM #1H OIL MT |
| FOREIGNER 33/4 W2JO FEE #1H OIL MT |
| GLOCK 16 B2AD FED #1H OIL MT |
| IBEX 10 B3NC FED COM #1H OIL MT |
| IBEX 10 B3OB FED COM #1H OIL MT |
| OXBOW 26/25 W1DA FED COM #1H OIL MT |
| PRINCE 31 W0DA FED COM #1H OIL MT |
| PRONGHORN 15 B3BO FED COM #1H OIL MT |
| RED HILLS WEST UNIT #018H OIL MT |
| SUMIDEROS 12 W1PA FED COM #1H OIL MT |
| BIG SINKS 1 A2PA FED COM #1H OIL MT |
| DELAWARE RANCH 11 NC FEE #1H OIL MT |
| Armstrong 26 23 B2HA Federal Com 001 |
| Kentzel State 42 SL |
| TXL 19 H301DM |
| TXL 31 H301PA |
| TXL 41 B201DM |
| TXL SOUTH 56-T2-2X11 W101DE |
| TXL 37 W201PA |
| KENTZEL STATE 42 W101BO |

**TOTAL 104**

| APPENDIX 1 |
|---|
| **Mewbourne Facility Name** |
| Forty Niner Ridge Unit 105H 106H Battery |
| FNR 17/20 W2IP FED COM #3H OIL MT |
| FNR FED UNIT #1H OIL MT |
| Speedwagon 27 Fee Battery |
| Yardbirds 3 W0AP Fee 2H W2AP 1H Battery |
| Queen 23 24 Fed Com Battery |
| Hoss 2 11 Federal Com Battery |
| Mad Dog 26 MD State Com 1H Battery |
| Toro 36 B3CN B2CN State 1H Battery |
| Toro 36 B3AP State 1H Battery |
| Pronghorn 15 B3CN Fed Com 1H Battery |
| Cabra Nino 11 B3MD State Com 1H Battery |
| Salado Draw 9 16 W1BO Fed Com Battery |
| El Mar 21 W0DM 2H W1CN 3H W0CN 4H Battery |

| |
|---|
| Jennings 34 W1MD Fed Com 1H Battery |
| Lindale 24-25 W1AH Fed 1H 2H Battery |
| SALADO DRAW 10 W1PA FED COM #2H OIL MT |
| BILBREY 34/27 B2NC FED COM #1H OIL MT |
| VIRGO 24/23 B2AD FED COM #1H OIL MT |
| ROSCOE 6 B3AD FED COM #1H OIL MT |
| BOSTON 7 W2MP FEE #1H OIL MT |
| ROCK SPUR 27 W2CN STATE COM #1H OIL MT |
| HOLLYWOOD 28/33 W2IP FED COM #1H OIL MT |
| South Loving 2 11 W0DE State Com 001H |
| JOURNEY 12 W0MP FEE COM #3H OIL MT |
| Jennings 27 W0AP Fed Com 3H Oil MT Battery |
| BLACK LAKE 5 PA STATE COM 001H |
| SKEEN 21 STATE COM 002H |
| LAYLA 35 MD FEE COM 001H |
| FLEETWOOD 36 25 W2ML STATE COM 002H |
| BUFFALO TRACE 1 36 W1PA FEDERAL COM 002H |
| OWL DRAW 27 22 B2NC FEDERAL COM #001H |
| OWL DRAW 22 W1AP FED COM #1H OIL MT |
| Red Hills West 22 Federal Com 001 |
| STERLING POUND 20/29 W2DE ST #1 OIL MT |
| WOLFMAN 5/4 W0LI FED COM #1H OIL MT |
| GHOSTRIDER 25/36 W0AP FED COM 1H OIL MT |
| GHOSTRIDER 25/36 WODM FED COM #2H OIL MT |
| MOTLEY 6/7 W2DE FED COM #1H OIL MT |
| Black Lake 7 CN State Com #002H |
| ARMSTRONG 26 23 W1EE FEDERAL COM #001H |
| DEVON 8 W2PM FEE #1H OIL MT |
| GOOSE 29/28 W2BA ST COM #1H OIL MT |
| ROCK SPUR 27 W2AP STATE #1H OIL MT |
| VIPER 29 32 WOLM FED COM #1H OIL MT |
| PADUCA 7/6 A2ED FED COM #1H OIL MSTR |
| DELAWARE RANCH 14 B2BO FEE #1H OIL MT |
| RED HILLS WEST UNIT #007H OIL MT |
| ANNABELLE 18/13 W2PO FED COM #1H OIL MT |
| BIG SINKS 1 W1PA FED COM #2H OIL MT |
| BIRDDOG 20/17 B2ED ST COM #1H OIL MT |
| DELAWARE RANCH 11 W2NC FEE #1H OIL MT |
| DERRINGER 18 B2MP FED #1H OIL MT |
| Fuller 14 23 W1IP and 14 11 W1HA Battery |
| FULLER 14/23 B2LM FED COM #1H OIL MT |
| FULLER 14/23 W2LM FED COM #2H OIL MT |
| GAZELLE 22 B3MD FED COM #1H OIL MT |

| |
|---|
| LA TRUCHA 6 B1CV ST COM 1H OIL MT |
| RED HILLS WEST UNIT #008H OIL MT |
| SLIDER 18 WOMD FED COM #1H OIL MT |
| SPEEDWAGON 27 W2DM FEE #1H OIL MT |
| WILD TURKEY 36/35 B2AB ST COM 1H OIL MT |
| MAD DOG 35 CN ST COM #1H OIL MT |
| FULLER 13/24 BATTERY OIL MT |
| SALADO DRAW 10 A3PA FED #2H OIL MT |
| SALADO DRAW 9 AP FEDERAL COM #001H |

**TOTAL 66**

| **APPENDIX 2** |
|---|
| **Mewbourne Facility Name** |
| BILBREY 34/27 B2NC FED COM #1H OIL MT |
| VIRGO 24/23 B2AD FED COM #1H OIL MT |
| ROSCOE 6 B3AD FED COM #1H OIL MT |
| BOSTON 7 W2MP FEE #1H OIL MT |
| ROCK SPUR 27 W2CN STATE COM #1H OIL MT |
| HOLLYWOOD 28/33 W2IP FED COM #1H OIL MT |
| South Loving 2 11 W0DE State Com 001H |
| JOURNEY 12 W0MP FEE COM #3H OIL MT |
| Jennings 27 W0AP Fed Com 3H Oil MT Battery |
| BLACK LAKE 5 PA STATE COM 001H |
| LAYLA 35 MD FEE COM 001H |
| FLEETWOOD 36 25 W2ML STATE COM 002H |
| BUFFALO TRACE 1 36 W1PA FEDERAL COM 002H |
| OWL DRAW 27 22 B2NC FEDERAL COM #001H |
| OWL DRAW 22 W1AP FED COM #1H OIL MT |
| Red Hills West 22 Federal Com 001 |
| WOLFMAN 5/4 W0LI FED COM #1H OIL MT |
| GHOSTRIDER 25/36 W0AP FED COM 1H OIL MT |
| GHOSTRIDER 25/36 WODM FED COM #2H OIL MT |
| MOTLEY 6/7 W2DE FED COM #1H OIL MT |
| Black Lake 7 CN State Com #002H |
| DEVON 8 W2PM FEE #1H OIL MT |
| GOOSE 29/28 W2BA ST COM #1H OIL MT |
| ROCK SPUR 27 W2AP STATE #1H OIL MT |
| PADUCA 7/6 A2ED FED COM #1H OIL MSTR |
| RED HILLS WEST UNIT #007H OIL MT |
| BIG SINKS 1 W1PA FED COM #2H OIL MT |

| |
|---|
| BIRDDOG 20/17 B2ED ST COM #1H OIL MT |
| DELAWARE RANCH 11 W2NC FEE #1H OIL MT |
| DERRINGER 18 B2MP FED #1H OIL MT |
| Fuller 14 23 W1IP and 14 11 W1HA Battery |
| FULLER 14/23 B2LM FED COM #1H OIL MT |
| FULLER 14/23 W2LM FED COM #2H OIL MT |
| GAZELLE 22 B3MD FED COM #1H OIL MT |
| LA TRUCHA 6 B1CV ST COM 1H OIL MT |
| RED HILLS WEST UNIT #008H OIL MT |
| SLIDER 18 WOMD FED COM #1H OIL MT |
| SPEEDWAGON 27 W2DM FEE #1H OIL MT |
| WILD TURKEY 36/35 B2AB ST COM 1H OIL MT |
| MAD DOG 35 CN ST COM #1H OIL MT |
| STYX 17 W2PA FEE COM #1H OIL MT |
| ZEPPELIN 32 W0LI ST COM #1H OIL MT |
| YARDBIRDS 3 W2DM FEE #1H OIL MT |
| Red Hills West 21 W1DM Federal Com 003H |
| WEST LOVING 12 W2EH STATE COM 1H OIL MT |
| DEVON 6 W2AD FEE #1H OIL MT |
| CREEDENCE 21 16 & KANSAS 28 33 BATTERY |
| JOURNEY 12 B2MP FEE #001H |
| FORTY NINER RIDGE UNIT #102 |
| Fuller 14 23 B2IP Federal #002H |
| COMMODORE 30 W2PA FED COM #1H OIL MT |
| Coltrane 36 25 W0PI Federal Com #001H |
| ANNABELLE 13/18 W2BA FED COM #1H OIL MT |
| ARMSTRONG 26/35 W0LM FED COM #1H OIL MT |
| CHICAGO 9/8 W0HE FEE COM #1H OIL MT |
| BOSTON 7 W0LI FEE #1H OIL MT |
| CAPER 20/29 B2CN FED COM #1H OIL MT |
| CAST AWAY 6 B2BW ST COM UNIT 1H OIL MT |
| EL NINO 13 B3DM ST COM #1H OIL MT |
| FOREIGNER 33/4 W2JO FEE #1H OIL MT |
| GLOCK 16 B2AD FED #1H OIL MT |
| IBEX 10 B3NC FED COM #1H OIL MT |
| IBEX 10 B3OB FED COM #1H OIL MT |
| OXBOW 26/25 W1DA FED COM #1H OIL MT |
| PRINCE 31 W0DA FED COM #1H OIL MT |
| PRONGHORN 15 B3BO FED COM #1H OIL MT |
| RED HILLS WEST UNIT #018H OIL MT |
| SUMIDEROS 12 W1PA FED COM #1H OIL MT |

**TOTAL 68**

**APPENDIX 3**

| Mewbourne Facility Name |
| --- |
| FNR 17/20 W2IP FED COM #3H OIL MT |
| FNR FED UNIT #1H OIL MT |
| Hoss 2 11 Federal Com Battery |
| Lindale 24-25 W1AH Fed 1H 2H Battery |
| FLEETWOOD 36 25 W2ML STATE COM 002H |
| BUFFALO TRACE 1 36 W1PA FEDERAL COM 002H |
| ROCK SPUR 27 W2AP STATE #1H OIL MT |
| BIG SINKS 1 W1PA FED COM #2H OIL MT |
| Fuller 14 23 W1IP and 14 11 W1HA Battery |
| Fuller 14 23 B2IP Federal #002H |
| PRINCE 31 W0DA FED COM #1H OIL MT |
| BIG SINKS 1 A2PA FED COM #1H OIL MT |

**TOTAL 12**

**APPENDIX 4**

| Mewbourne Facility Name |
| --- |
| Forty Niner Ridge Unit 105H 106H Battery |
| FNR 17/20 W2IP FED COM #3H OIL MT |
| FNR FED UNIT #1H OIL MT |
| Speedwagon 27 Fee Battery |
| Yardbirds 3 W0AP Fee 2H W2AP 1H Battery |
| Queen 23 24 Fed Com Battery |
| Hoss 2 11 Federal Com Battery |
| Mad Dog 26 MD State Com 1H Battery |
| Toro 36 B3CN B2CN State 1H Battery |
| Toro 36 B3AP State 1H Battery |
| Pronghorn 15 B3CN Fed Com 1H Battery |
| Cabra Nino 11 B3MD State Com 1H Battery |
| Salado Draw 9 16 W1BO Fed Com Battery |
| El Mar 21 W0DM 2H W1CN 3H W0CN 4H Battery |
| Lindale 24-25 W1AH Fed 1H 2H Battery |
| SALADO DRAW 10 W1PA FED COM #2H OIL MT |
| BILBREY 34/27 B2NC FED COM #1H OIL MT |
| ROSCOE 6 B3AD FED COM #1H OIL MT |
| ROCK SPUR 27 W2CN STATE COM #1H OIL MT |
| HOLLYWOOD 28/33 W2IP FED COM #1H OIL MT |
| JOURNEY 12 W0MP FEE COM #3H OIL MT |
| Jennings 27 W0AP Fed Com 3H Oil MT Battery |

| |
|---|
| BLACK LAKE 5 PA STATE COM 001H |
| FLEETWOOD 36 25 W2ML STATE COM 002H |
| BUFFALO TRACE 1 36 W1PA FEDERAL COM 002H |
| OWL DRAW 27 22 B2NC FEDERAL COM #001H |
| OWL DRAW 22 W1AP FED COM #1H OIL MT |
| Red Hills West 22 Federal Com 001 |
| DEVON 8 W2PM FEE #1H OIL MT |
| DELAWARE RANCH 14 B2BO FEE #1H OIL MT |
| DELAWARE RANCH 11 W2NC FEE #1H OIL MT |
| Fuller 14 23 W1IP and 14 11 W1HA Battery |
| FULLER 14/23 B2LM FED COM #1H OIL MT |
| FULLER 14/23 W2LM FED COM #2H OIL MT |
| GAZELLE 22 B3MD FED COM #1H OIL MT |
| SALADO DRAW 10 A3PA FED #2H OIL MT |
| SALADO DRAW 9 AP FEDERAL COM #001H |
| Red Hills West 21 W1DM Federal Com 003H |
| JOURNEY 12 B2MP FEE #001H |
| DELAWARE RANCH 11 NC FEE #1H OIL MT |
| Armstrong 26 23 B2HA Federal Com 001 |

**TOTAL 41**

| APPENDIX 5 |
|---|
| **Mewbourne Facility Name** |
| Kentzel State 42 SL |
| TXL 19 H301DM |
| TXL 31 H301PA |
| TXL 41 B201DM |
| TXL SOUTH 56-T2-2X11 W101DE |
| TXL 37 W201PA |
| KENTZEL STATE 42 W101BO |

**TOTAL 7**

| APPENDIX 6 |
|---|
| **Mewbourne Facility Name** |
| TXL 19 H301DM |
| TXL 31 H301PA |
| TXL 41 B201DM |
| TXL SOUTH 56-T2-2X11 W101DE |

| TXL 37 W201PA |
|---|
| KENTZEL STATE 42 W101BO |

**TOTAL 6**

| **APPENDIX 7** |
|---|
| **Mewbourne Facility Name** |
| Kentzel State 42 SL |
| TXL 19 H301DM |
| TXL 31 H301PA |
| TXL 41 B201DM |
| TXL SOUTH 56-T2-2X11 W101DE |
| TXL 37 W201PA |
| KENTZEL STATE 42 W101BO |

**TOTAL 7**